**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

Grace A. Rawlins (SBN 355235)
grawlins@ipcounselors.com
Jason M. Drangel (*Pro Hac Vice Application Forthcoming*)
jdrangel@ipcounselors.com
Kerry B. Brownlee (*Pro Hac Vice Application Forthcoming*)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391
*Attorneys for Plaintiff King Spider LLC*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KING SPIDER LLC<br>*Plaintiff*<br><br>v.<br><br>SAMER AWADA;<br>SNEAKERPLUGLA LLC; and<br>GRIFFIN WHITNEY<br>*Defendants* | 2:25-cv-191<br><br>Trademark<br>Infringement/Counterfeiting/Copyright<br>Infringement<br><br>**COMPLAINT**<br><br>**ACTION SEEKING STATEWIDE<br>OR NATIONWIDE RELIEF**<br><br>**Demand for Jury Trial** |

King Spider LLC ("King Spider" or "Plaintiff"), a New York limited liability company, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.      This case involves claims of trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); trademark infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyright in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; and related state and common law claims, arising from Defendant Samer Awada ("Awada"), Defendant Sneakerplugla LLC ("Sneakerplug LA"), and Defendant Griffin Whitney's ("Whitney") (collectively, Awada, Sneakerplug LA and Whitney are hereinafter referred to as "Defendants") infringement of the Sp5der Marks (as defined *infra*) and Sp5der Work (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Sp5der Products.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to: 28 U.S.C. §§ 1331, 1338(a) and/or 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the

Copyright Act, 17 U.S.C. §§ 101 *et seq.*; 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition; and 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this action as to form part of the same case or controversy.

3.      This Court has general and/or specific personal jurisdiction over Defendants because, upon information and belief, Sneakerplug LA is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in this judicial district; Awada and Whitney are individuals, who reside in the State of California, who maintain residences and principal places of business in this judicial district; and Defendants conduct business, on a continuous and systematic basis, throughout the State of California and in this judicial district, and/or otherwise avails themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      Venue for this action is proper in the United States District Court for the Central District of California, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial

district, and harm to Plaintiff has occurred in this district. Alternatively, as noted *supra*, this Court has personal jurisdiction over Defendants.

## **THE PARTIES**

5.      King Spider is a limited liability company that is organized and existing under the laws of the State of New York, with an address of 1000 Park Avenue, Apartment A8, New York, New York 10028.

6.      Upon information and belief, Awada—the managing member and/or owner and registered agent of Sneakerplug LA—is an individual, who resides at 1435 E. Sycamore Avenue, El Segundo, CA 90245.

7.      Upon information and belief, Sneakerplug LA is a California limited liability company, with its principal place of business, according to the records on file with the California Secretary of State, of 1435 E. Sycamore Avenue, El Segundo, CA 90245 (i.e., Awada's residence).

8.      Upon information and belief, Whitney is an individual, who resides at 646 W. Walnut Avenue, El Segundo, CA 90245.

9.      Upon information and belief, Defendants also conduct business from a warehouse located at 1434 6th Street, #6, Santa Monica, CA 90401.

10.     At all times relevant hereto, Awada and/or Whitney directed, controlled, directly participated in, and has/have been otherwise responsible for, all aspects of Sneakerplug LA's operations, including the design, marketing and advertisement, distribution, sales, and/or manufacture of the Counterfeit Products (as defined *infra*), as

well as the operation of Sneakerplug LA. Awada and/or Whitney's intentional unlawful acts and personal participation in the wrongful conduct underlying this action deprive Awada and/or Whitney of any protection each might otherwise have for Awada and/or Whitney's personal liability under the corporate shield doctrine, or otherwise.

11.    Upon information and belief, in connection with the manufacturing, marketing, advertising, promotion, distribution and sale of the Counterfeit Products, Awada and/or Whitney has/have exercised complete dominion and control over Sneakerplug LA such that it is Awada and/or Whitney's alter ego, a sham, façade, and mere instrumentality for Awada and/or Whitney's personal benefit, and Awada and/or Whitney has disregarded and abused the corporate form and structure of Sneakerplug LA.

12.    Upon information and belief, Awada and Whitney are each a moving and conscious force behind the infringement that is the subject of this lawsuit.

13.    Upon information and belief, since the time of its creation, now, and at all times relevant to this Complaint, such a unity of interest and ownership existed, and currently exists, between Sneakerplug LA on the one hand, and Awada and/or Whitney on the other hand, such that separate personalities did not, and do not, in reality exist.

## **GENERAL ALLEGATIONS**
### **Plaintiff and Its Well-Known Sp5der Products**

14.    The Sp5der brand, launched by Plaintiff in or about 2019, is a successful and high-end lifestyle streetwear line of men's and women's apparel, accessories, bags and other ready-made goods, which are distributed in the United States and abroad ("Sp5der

Brand" and "Sp5der Products", respectively). Images of examples of the Sp5der Products are attached hereto as **Exhibit A** and incorporated herein by reference.

15.     The Sp5der Brand is recognized for its familiar motifs, including rhinestones and spider webs, as well as its eccentric design language.

16.     The Sp5der Products are sold exclusively direct to consumer via King Spider's official website, https://kingspider.co.

17.     Since the launch, the Sp5der Brand and Sp5der Products have been featured in numerous press publications, including, but not limited to, *Complex*, *Highsnobiety*, *Hot New HipHop* and *Hypebeast*, among others.

18.     The Sp5der Products typically retail for between $25.00 - $1,000.00.

19.     While King Spider has gained significant common law trademark and other rights in its Sp5der Marks and Sp5der Products through its use, advertising and promotion, King Spider also protected its valuable rights by filing for and obtaining federal trademark registrations.

20.     For example, King Spider owns the following U.S. Trademark Registration Nos.: 6,512,199 for "SP5DER" for a variety of goods in Class 25; 6,681,320 for " sp5der " for a variety of goods in Class 25; 7,049,772 for " SP5DER " for a variety of goods in Class 25; 7,031,211 for " 555 555 " for a variety of goods in Class 25; 6,688,472 for " p*nk! " for a variety of goods in Class 25; 7,151,224 for

"SP5WOM" for a variety of goods in Class 25; 7,270,084 for "  " for a variety of goods in Class 25; 7,367,336 for "SP5 WORLDWIDE" for a variety of goods in Class 25; and 7,166,293 for "555 555" for a variety of goods in Class 25 (collectively, the "Sp5der Registrations"). True and correct copies of the Sp5der Registrations are attached hereto as **Exhibit B** and incorporated herein by reference.

21.    King Spider has also filed the following U.S. Trademark Application Nos.: 98/432,671 for "KING SPIDER" for a variety of goods in Class 25; 98/434,759 for  "  " for a variety of goods in Class 25; 98/434,698 for " " for a variety of goods in Class 25; 98/549,121 for "KUUMO" for a variety of goods in Class 25; and 98/549,107 for "KUUMO" for a variety of goods in Class 25 (collectively, the "Sp5der Applications") (the marks covered by the Sp5der Registrations and Sp5der Applications are collectively referred to as the "Sp5der Marks"). True and correct copies of the Sp5der Applications are attached hereto as **Exhibit C** and incorporated herein by reference.

22.    The Sp5der Marks are currently in use in commerce in connection with the Sp5der Products. The Sp5der Marks were first used in commerce on or before the dates of first use as reflected in **Exhibits B** and **C**.

23.    Additionally, King Spider is also the owner of the following copyright related to the Sp5der Products: U.S. Copyright Registration No VA 2-400-614, covering P*NK! (the "Sp5der Work"). A true and correct copy of the registration certificate for the

Sp5der Work, and its associated deposit materials, is attached hereto as **Exhibit D** and incorporated herein by reference.

24.    The success of the Sp5der Products is due in part to King Spider's marketing and promotional efforts. These efforts include advertising and promotions through social media, King Spider's website (*available at* https://kingspider.co) and print and internet-based advertising.

25.    King Spider's success is also due to its use of the highest quality materials and processes in making the Sp5der Products.

26.    Additionally, King Spider owes a substantial amount of the success of the Sp5der Products to its consumers and word-of-mouth buzz that its consumers have generated.

27.    King Spider's efforts, the quality of the Sp5der Products and the word-of-mouth buzz generated by its consumers have made the Sp5der Marks, Sp5der Work and Sp5der Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Sp5der Marks, Sp5der Work and Sp5der Products and have come to associate them exclusively with King Spider. King Spider has acquired a valuable reputation and goodwill among the public as a result of such associations.

28.    King Spider has gone to great lengths to protect its interests in the Sp5der Marks, Sp5der Work, and Sp5der Products. No one other than King Spider and its authorized licensees and distributors are authorized to manufacture, import, export,

advertise, offer for sale or sell any goods utilizing the Sp5der Marks and/or Sp5der Work, or use the Sp5der Marks and/or Sp5der Work in connection with goods or services or otherwise, without the express permission of King Spider.

## **Defendants' Wrongful and Infringing Conduct**

29.     In light of Plaintiff's success with its Sp5der Products, Plaintiff and its Sp5der Products have become targets for unscrupulous individuals and entities, who wish to take a free ride on the goodwill, reputation and fame Plaintiff has amassed in the same.

30.     Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions, which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing one or more of the Sp5der Marks and/or marks that are confusingly similar thereto (collectively, the "Infringing Marks"), and/or the Sp5der Work and/or designs that are substantially similar thereto (collectively, "Infringing Products" or "Counterfeit Products") to U.S. consumers (including those located in the State of California).

31.     Defendants have heavily promoted their Counterfeit Products, which are offered for sale and/or sold at significantly below market prices, via social media, including, but not limited to the @unionreups handle on Instagram (the "Unionreups Handle").

32.     For example, Defendants have solicited orders from consumers by advertising on the Unionreups Handle that new items would be stocked, including "400+ Spider units", and encouraging consumers to direct message or text Defendants. True and correct screenshots of examples of Defendants' posts via the Unionreups Handle are below



33.     Additionally, Defendants have posted a link to a Google workbook of their product inventory via the Unionreups Handle, which includes an entire tab dedicated to Counterfeit Products. One of Defendants' videos shared on Instagram via the Unionreups Handle, which links to said workbook appears below, and a true and correct print out of a tab of the workbook named "Sp5der Inventory" is attached hereto as **Exhibit E** and incorporated herein by reference.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   34.    Not only have Defendants advertised that they have, or will have,

21 Counterfeit Products, but they have also posted one or more photographs of a number of

22 Counterfeit Products, and have indicated that they are "SOLD OUT", as depicted

23 below:

24
25
26
27
28



35.     In order to gather additional information and evidence regarding Defendants' infringing activities, Plaintiff's counsel hired investigators ("Plaintiff's Investigators"), which conducted numerous undercover test buys.

36.     In or about early October 2024, Plaintiff's Investigators, pursuant to the instructions provided by Defendants via the Unionreups Handle, texted Defendants at 310-227-7857[1] in order to place a test buy, and spoke with Whitney. For the purchase, Whitney identified his Zelle information for payment as: 310-227-7857, Sneakerplug La LLC.

─────────────────────

[1] Upon information and belief, 310-227-7857 is a wireless telephone number associated with, or registered to, Awada.

37.    True and correct photographs of the Counterfeit Product purchased from Defendants by Plaintiff's Investigators at significantly below market prices, and picked up by Plaintiff's Investigators in person, appear below:



38.    In or about early October 2024, Plaintiff's Investigators, pursuant to the instructions provided by Defendants via the Unionreups Handle, also texted Defendants at 310-341-8688 to place a buy.[2] For this purchase, Plaintiff's Investigators paid via ApplePay, and Defendants then shipped the same via UPS.

---

[2] Defendants' Unionreups Handle has featured two phone numbers: 310-227-7857 (associated with Awada), and 310-341-8688, which, upon information and belief, is a wireless telephone number that is associated with, or registered to, Whitney's father.

39.     The return address listed on the test buy shipped by Defendants identified

Griffin Whitney, with an address of 646 W. Walnut Avenue, El Segundo, CA 90245.

40.     True and correct photographs of the Counterfeit Product purchased at

significantly below market prices by Plaintiff's Investigators, and received via UPS

appear below:





41.     Defendants' Counterfeit Products, which have been confirmed as

unauthorized, are nearly indistinguishable from Plaintiff's Sp5der Products, only with

minor variations that no ordinary consumer would recognize.

42.    For example, a side-by-side comparison of one of Defendants' Counterfeit Products to the relevant Sp5der Products, which appears below, evidences the willfulness of Defendants' conduct:

| **Counterfeit Product Example** | **Sp5der Product Example** |
|---|---|
|  |  |

43.    Defendants are not, and have never been, authorized by King Spider or any of its authorized agents to use the Sp5der Marks or Sp5der Work on or in connection with the Counterfeit Products, or otherwise.

44.    By Defendants' dealing in Counterfeit Products (including, without limitation, manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Counterfeit Products), Defendants have violated King Spider's exclusive rights in the Sp5der Marks and Sp5der Work, and have used marks or designs that are confusingly or substantially similar to, identical to and/or constitute

infringement thereof in order to confuse consumers into believing that Defendants' Counterfeit Products are Sp5der Products and/or that Defendants are affiliated with King Spider, and aid in the promotion of Defendants' Counterfeit Products.

45.    Defendants' conduct began long after King Spider's adoption and use of the Sp5der Marks and Sp5der Work, after King Spider filed for and/or obtained federal registrations in the same, as alleged above, and after the Sp5der Products, Sp5der Marks and Sp5der Work became well-known to the purchasing public.

46.    Upon information and belief, prior to and contemporaneous with their infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Sp5der Marks and Sp5der Work, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the Sp5der Products, and in bad faith adopted or used the Sp5der Marks and Sp5der Work.

47.    Defendants have been engaging in the illegal and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to King Spider's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of King Spider, the Sp5der Products, Sp5der Marks, and/or Sp5der Work.

48.    Defendants' infringing actions, as alleged herein, have caused, and will continue to cause, confusion, mistake, economic loss and have deceived, and will continue to deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously

believe that such substandard, lower priced Counterfeit Products are licensed by or otherwise associated with Plaintiff, and damaging Plaintiff.

49.    By engaging in these actions, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and/or counterfeited the Sp5der Marks, infringed the Sp5der Work, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

50.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

51.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.    Plaintiff is the exclusive owner of all right and title to the Sp5der Marks.

53.    Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

54.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Sp5der Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced,

copied and/or colorably imitated the Sp5der Marks and/or used spurious designations that are identical with, or indistinguishable from, the Sp5der Marks on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

55.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Sp5der Marks through their participation in such activities.

56.    Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Sp5der Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

57.    Defendants' unauthorized use of the Sp5der Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Sp5der Marks.

58.    Defendants' actions constitute willful counterfeiting of the Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

59.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

60.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

61.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use, as reflected in the certificates of registration attached hereto as **Exhibit B**.

63.     Plaintiff, as the owner of all rights, title and interest in and to its Sp5der Marks has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

64.     Upon information and belief, Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Sp5der Marks.

65.     Defendants did not seek and thus, inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Sp5der Marks, to use the Sp5der Marks and/or the Infringing Marks, and/or deal in and commercially manufacture, advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products and/or related products bearing the Sp5der Marks or the Infringing Marks into the stream of commerce.

66.     Defendants knowingly and intentionally used one or more of the Sp5der Marks and/or the Infringing Marks in connection with Defendants' manufacturing,

advertisement, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, bearing and/or utilizing the Sp5derMarks and/or the Infringing Marks.

67.    Defendants' egregious and intentional use of the Sp5der Marks and/or Infringing Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of Defendants' Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Sp5der Products or that Defendants' Counterfeit Products are otherwise associated with, or authorized by, Plaintiff.

68.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

69.    Defendants' continued knowing, and intentional use of the Sp5der Marks and/or Infringing Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Sp5der Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

70.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der

Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

71.    Based on Defendants' actions, as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Infringement of Unregistered Trademarks)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**

72.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.    Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the Sp5der Applications attached hereto as **Exhibit C**.

74.    Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks and Sp5der Applications, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

75.    Defendants were, at the time they engaged in their actions as alleged

herein, actually aware that Plaintiff is the owner of the Sp5der Marks.

76.     Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Sp5der Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Sp5der Products and/or related products bearing the Sp5der Marks into the stream of commerce.

77.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing the Sp5der Marks and/or Infringing Marks.

78.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Sp5der Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Counterfeit Products.

79.     Defendants' egregious and intentional use of the Sp5der Marks and/or the Infringing Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public

into believing that Defendants' Counterfeit Products are Sp5der Products or are otherwise associated with or authorized by Plaintiff.

80.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

81.     Defendants' continued, knowing and intentional use of the Sp5der Marks without Plaintiff's consent or authorization constitutes intentional infringement of the Sp5der Marks in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125.

82.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

83.     Based on Defendants' actions, as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

84.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.      Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks, has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act § 43(a) (15 U.S.C. § 1125).

86.      The Sp5der Marks are inherently distinctive and/or have acquired distinctiveness.

87.      Defendants knowingly and willfully used in commerce products, and marketing and promotional materials, utilizing the Sp5der Marks and/or the Infringing Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, advertisement, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Sp5der Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, allowing Defendants to capitalize on the goodwill associated with,

and the consumer recognition of, the Sp5der Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

88.    By manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical and/or confusingly similar to the Sp5der Products using the Sp5der Marks and/or the Infringing Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products and did in fact induce, and intends to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Sp5der Products, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

89.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of the Sp5der Marks and/or Infringing Marks would cause confusion, mistake or deception among purchasers, users and the public.

90.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Sp5der Products and Sp5der Marks.

91.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Sp5der Products and of the value of its Sp5der Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the same.

92.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

93.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.     Plaintiff is the exclusive owner of the Sp5der Work.

95.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Sp5der Work.

96.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market the Sp5der Work.

97.     Without permission, Defendants knowingly and intentionally reproduced, copied, displayed, and/or distributed the Sp5der Work by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products that bear such Sp5der Work, or artwork that is, at a minimum, substantially similar to the Sp5der Work, and/or constitutes a derivation thereof.

98.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Sp5der Work, including Plaintiff's exclusive rights to reproduce, prepare derivative works of, distribute, display and/or sell such Sp5der Work in violation of 17 U.S.C. § 501(a).

99.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

100.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and

reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Unfair Competition)
### [Cal. Bus. & Prof. Code § 17200]

101.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

102.    California Business and Professions Code § 17200, *et seq*., states that unfair competition shall mean and include any "unlawful, unfair or fraudulent business act or practice."

103.    Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, and/or deception as to the source, origin, and/or sponsorship of Defendants' Counterfeit Products, and to falsely mislead consumers into believing that the Counterfeit Products themselves, are those of, affiliated with, and/or approved by Plaintiff.

104.    Accordingly, Defendants' unauthorized use of the Sp5der Marks, the Infringing Marks and/or the Sp5der Work constitutes unfair competition in violation of California Business and Professionals Code § 17200, *et seq*.

105.    Defendants' acts of unfair competition have caused Plaintiff to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

106.    In light of the foregoing, Plaintiff is entitled to an injunction under California Business and Professions Code § 17200 *et seq*. restraining Defendants from engaging in further such unlawful conduct, as well as to restitution of those amounts

unlawfully obtained by Defendants through their wrongful conduct.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [California Common Law]

107.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.    By using the Sp5der Marks, the Infringing Marks, and/or the Sp5der Work and/or manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products to induce, and did induce and intends and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff and engaging in unfair competition in violation of the common law of the State of California. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales, and consumer recognition.

109.    Defendants' use of the Sp5der Marks, Infringing Marks and/or Sp5der Work and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Counterfeit Products.

110.    Defendants knew, or by the exercise of reasonable care should have known, that their use, and continued use of the Sp5der Marks, Infringing Marks and/or Sp5der Work and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users, and the public.

111.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and its competitive position while benefiting Defendants.

112.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Sp5der Products, and of the value of its Sp5der Marks and Sp5der Work as commercial assets, in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

113.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from its infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants, inclusive and each of them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages, and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B. In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for Defendants' willful trademark infringement of Plaintiff's federally registered Sp5der Marks, their infringement of the unregistered Sp5der Marks and for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

D. For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright

infringement of the Sp5der Work under 17 U.S.C. § 501(a);

E.  In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Sp5der Work, pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of a final judgment;

F.  For restitution of those amounts unlawfully obtained by Defendants through their illegal and infringing conduct, as alleged herein, pursuant to California Business and Professionals Code § 17200;

G.  For damages to be proven at trial for common law unfair competition;

H.  For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

    ii.  directly or indirectly infringing in any manner any of the Sp5der Marks and/or Sp5der Work;

iii. using any reproduction, counterfeit, copy or colorable imitation of the Sp5der Marks, including the Infringing Marks, to identify any goods or services not authorized by Plaintiff;

iv. using any of the Sp5der Marks and/or the Sp5der Work or any other marks or artwork that are confusingly or substantially similar thereto, on or in connection with Defendants' manufacturing, importation, exportation, advertisement, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake, and/or to deceive members of the trade and/or the public as to the affiliation, connection, origin or association of any product manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiff and/or as to the sponsorship or approval of any product manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein,

including the use of the Sp5der Marks, Sp5der Work and the advertising of and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to the manufacture, advertisement, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products;

x.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xi.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

I.   For an order of the Court requiring that Defendants deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all advertising and promotional materials in the possession, custody or control of Defendants that infringe the Sp5der Marks or Sp5der Work, or bear any of the Infringing

Marks, or designs that are substantially similar to the Sp5der Work;

J.  For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacture, advertisement, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

K.  For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

L.  For an award of exemplary or punitive damages in an amount to be determined by the Court;

M.  For Plaintiff's reasonable attorneys' fees;

N.  For all costs of suit; and

O.  For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues and claims so triable.

Dated: January 8, 2025                    Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY: S/ Grace A. Rawlins_____
Grace A. Rawlins (SBN 355235)
grawlins@ipcounselors.com

-35-

Jason M. Drangel
jdrangel@ipcounselors.com
*Pro Hac Vice Application Forthcoming*
Kerry B. Brownle
kbrownlee@ipcounselors.com
*Pro Hac Vice Application Forthcoming*
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391
*Attorneys for Plaintiff King Spider LLC*


Peter J. Farnese
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232
*Attorneys for Plaintiff King Spider LLC*

COMPLAINT